UNITED STATES, Appellant

v

LUCULUS HUMPHRYS, Airman Third Class,
U. S. Air Force, Appellee

7 USCMA 306, 22 CMR 96

No. 8253

Decided August 24, 1956

*Lieutenant Colonel Francis P. Murray* argued the cause for Appellant, United States. With him on the brief was *Major Fred C. Vowell.*

*Major George M. Wilson* argued the cause for Appellee, Accused. With him on the brief was *Lieutenant Colonel Stanley S. Butt.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial convicted the accused of three specifications alleging violations of Article 134, Uniform Code of Military Justice, 50 USC § 728. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for five years. The convening authority modified the findings of guilty on specifications 2 and 3 and approved the sentence. On review, a divided board of review held that the law officer erred in his instructions in regard to specification 1. It set aside the findings of guilty as to that specification, and reduced the confinement part of the sentence to three years. The Judge Advocate General of the Air Force thereupon filed a certificate for review by this Court.

The specification set aside by the board of review alleges that the accused wrongfully communicated to Airman J. D. Delana a threat to kill him. At the trial some evidence was presented which tended to show that at the time of the offense, the accused was intoxicated. There also was some lay testimony regarding unusual behavior by the accused. An Air Force psychiatrist testified that, on the basis of his observation of the accused over a six-day period, he believed that the accused was suffering from a behavior disorder characterized by very limited respect for social codes and a lack of group attachment and a "good conscience formation." The psychiatrist, however, was of the opinion that the accused could distinguish right from wrong, could adhere to the right, and could cooperate in his defense.

Relying upon United States v Calo, 19 CMR 903; and United States v Noriega, 20 CMR 893, rev on other grounds 7 USCMA 196, 21 CMR 322, the board of review held that the offense of wrongfully communicating a threat requires a specific intent. Since the law officer did not instruct the court-martial as to the effect of the accused's intoxication and mental condition on his ability to entertain a specific intent, the board of review concluded that he erred to the accused's prejudice. See United States v Dunnahoe, 6 USCMA 745, 21 CMR 67. The first question for review, therefore, is whether the board of review correctly determined the elements of the offense.

Communicating a threat is not expressly defined as an offense under the Uniform Code of Military ■ Justice. However, in United States v Holiday, 4 USCMA 454, 16 CMR 28, we held that it falls within the proscription of Article 134. We further held that the offense is complete when an "avowed determination to injure another is announced." Ibid page 458. More recently, in United States v Davis, 6 USCMA 34, 37, 19 CMR 160, the elements of the offense were enumerated as follows:

(1) That the threat was without justification or excuse;
(2) That it was wrongful;
(3) That it was made known to the victim;
(4) That within its language the accused declared his purpose or intent to do an act which was wrongful.

The fourth element is the one with which we are directly concerned. The point which seems to need ■ emphasis is that proof of a declaration of intent is different from proof of the intent itself. To establish the threat, the prosecution must show that the declaration was made. However, it is not required to prove that the accused actually entertained the stated intention. True, the surrounding circumstances, or the accused himself, may show that the declaration was made in jest or for some other innocent and legitimate purpose.

**307**

These circumstances would not affect the declaration element of the offense. Instead, they relate to whether the statement was made wrongfully and without justification or excuse. Consequently, a specific intent on the part of the accused is not itself an element of the offense. As we pointed out in United States v Holiday, supra, page 458, there is "no necessity for establishing a motivation" for the offense. Accordingly, the first certified question is answered in the negative. And this answer makes it unnecessary to consider the other questions in the certificate.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Air Force for submission to the board of review for reconsideration of specification 1 on the merits. If the board of review determines that the evidence is sufficient to support the allegations of the specification, it can reassess an appropriate sentence for all the approved findings of guilty.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

In previous cases, we have skirted around the periphery of this issue but in no instance has it been ▌ squarely before us. It is not without difficulty, principally because it concerns an offense which is not defined by military law, and because our previous opinions contain language which is susceptible of different interpretations. Because I was the author of some of the decisions which have caused members of boards of review in the offices of The Judge Advocates General to reach opposite conclusions, I believe it advisable critically to analyze some of our previous holdings. While it is my conclusion that our opinions state the rule that the offense of wrongfully communicating a threat does not involve an element of specific intent, I concede there is a reasonable basis to reach a different conclusion. However, the rationale of the dissenting members of the boards of review in this case and in United States v Nor-

iega, 7 USCMA 196, 21 CMR 322, seems more in accord with what we have said the law is and ought to be.

In the early case of United States v Sturmer, 1 USCMA 17, 1 CMR 17, authored by the Chief Judge, we were confronted with the question of the sufficiency of a specification, and we defined a threat in the following language: "A threat is an avowed present determination or intent to injure presently or in the future." There the accused was charged with stating: "I can't do anything about it now, but I'll use my fists on you later." After holding that the specification setting forth those words stated a cause of action, we went on to say:

". . . As long as the triers of facts are satisfied that the avowal of threatened injury was made wilfully and intentionally, it is not necessary that it involve immediate injury."

The last quoted sentence, if read carefully, does not, as argued, suggest that the execution of the offense must be specifically intended. As I interpret the language it goes no further than to state that if the utterance of the threatening language was wilful and intentional the element of intent has been supplied.

The next case in point of time was United States v Holiday, 4 USCMA 454, 16 CMR 28. In that case the Chief Judge, in an opinion with which I concurred, stated in pertinent part:

"As used in both military and civilian law, the term 'threat' connotes:

'An avowed present determination or intent to injure presently or in the future.' [United States v Metzdorf, 252 Fed 933 (Mont); United States v Sturmer, 1 USCMA 17, 1 CMR 17.]

"At common law, simple threats, unaccompanied by an intent thereby to influence the action of the person threatened, did not constitute a crime. The potential harm presaged by such utterances, however, was clearly recognized, and one guilty of such conduct was required to furnish surety

conditioned on his future peaceful behavior. United States v Metzdorf, supra. An appreciation of the evil portents of this action is also reflected in modern legislation. See Code of District of Columbia, Title 22, Section 507."

In that case we cited United States v Metzdorf, 252 Fed 933 (Mont), as our authority for the definition. While we are not bound to follow the reasoning used by the cited Judge, his language makes it clear that he believed the offense required a specific intent, for he said:

". . . The second part of the statute, and under which is this indictment, applies to him who 'otherwise makes any such threat,' importing a threat to kill or to inflict bodily harm, made orally, or in writing exhibited. A threat is an avowed present determination or intent to injure presently or in the future. *In threats to influence, existence of intent to execute is not essential; in the threats denounced by the second part of the statute, it is otherwise.* That the threat is conditioned upon a contingency subject to the maker's control does not deprive it of the quality of a threat, if the contingency be a possible one. Every threat unexecuted involves some contingency, if none other than that the maker's purpose be not abandoned, or that the execution by him be not prevented." [Emphasis supplied.]

If my interpretation of the foregoing case is correct, then the majority of Federal courts have reached an opposite conclusion and their expressions are more consonant with the reasoning we have used to support our holding. In United States v Stickrath, 242 Fed 151 (SD Ohio) (1917), it was stated:

". . . As used in the statute and indictment, they are intended to signify that the defendant, at the time of making the threat charged against him, must have known what he was doing, and, with such knowledge, proceeded in violation of law to make it. They are used in contradistinction to 'ignorantly' and 'unintentionally.' *The offense denounced by the statute is completed at the instant the unlawful threat is knowingly and willfully made. It is not the execution of such threat, or (as claimed by defendant) a continuing intent to execute it, that constitutes the offense, but the making of it knowingly and willfully.* If it be thus made, the subsequent abandonment of the bad intent with which it was made does not obliterate the crime. The probabilities that there will be at once set in motion the evil consequences resulting to the public from its promulgation (aside from those attendant on its actual execution) are vastly greater than the probabilities that the threat will be carried out." [Emphasis supplied.]

Substantially the same concept was spelled out in United States v Stobo, 251 Fed 689 (Dela) (1918). There the Court said:

"The 13th cause of demurrer is that the indictment does not contain 'any averment of any facts or circumstances showing or indicating any intention or attempt on the part of the defendant by the supposed use of the words therein ascribed or imputed to the defendant to menace the President of the United States.' I have some difficulty in understanding the meaning of this cause of demurrer. *If it means that the making of a threat to take the life of or inflict bodily harm upon the President is not punishable unless the person making the threat intends to execute it by killing or inflicting bodily harm upon the President, I cannot recognize the soundness of the proposition.* If one wilfully in the hearing of others makes a threat against the life or bodily welfare of the President he is punishable under the act whether he uses the words lightly or with a set purpose to kill or maim. The effect upon the minds of the hearers, who cannot read his inward thoughts, is precisely the same and equally within the scope and obnoxious to the provisions of the act in either case. In view of the policy and broad scope of the act no one who wilfully utters in the hearing of others a threat against the life or limb of the

**309**

President and thereby inflames or seeks to inflame other minds against constituted authority can shield himself by the plea that the words were uttered lightly or without intent to do bodily harm. If he wilfully utters a threat in the hearing of others he must be held to intend its necessary or probable effect upon other minds." [Emphasis supplied.]

In Ragansky v United States, 253 Fed 643 (CA 7th Cir) (1918), the court specifically considered a contention that the words were not spoken in earnest. The court made short shrift of that assertion by saying:

"While the testimony is not preserved, it appears, from the statement of the judge in overruling a motion for a new trial, that 'there was a claim by this defendant and testimony in corroboration of his claim that he was joking, that he was not in earnest, that he did not intend to kill him.'

"*The court instructed the jury that 'the claim that the language was used as a joke, in fun,' is not a defense.* It was not claimed that every one present understood that he was joking, or that he intended them so to understand; the claim appears to have been that defendant had no intention to carry out his threat, and that, therefore, it was a joke; the instruction read in the light of the entire charge must be so construed, and in our judgment it was correct.

.　.　.　.　.

"And a threat is wilfully made, if in addition to comprehending the meaning of his words, the maker voluntarily and intentionally utters them as the declaration of an apparent determination to carry them into execution." [Emphasis supplied.]

A similar result was reached in United States v Reid, 49 F Supp 313 (WD La) (1943), wherein it was stated:

".　.　. The exact point was brought up by Mr. Raker in the discussion on the floor of the House who asked if the words 'and wilfully' should not be stricken out; but after Mr. Volstead had called attention to the fact that if this were done, anyone sending a newspaper or writing containing such a threat to another with no idea of approving it but simply to call attention to it, would violate the provisions against the use of the mails, *it was decided to leave these words in to show that the threats must be wilful or intentionally made but not necessarily that the intention of carrying them out existed.* See United States v Stobo, supra. It was upon this point, as to whether it was necessary that the Government prove that the accused had the intention of carrying out his threats, as distinguished from wilful and intentional making of the statements, that this court charged the jury at length before it retired." [Emphasis supplied.]

Finally, in United States v Daulong, 60 F Supp 235 (WD La) (1945), the same principle is spelled out in the following language:

".　.　. The statute does not penalize the imagining, wishing or hoping that the act will be committed by someone else. *It was intended to prevent persons, whether with serious intention to carry them out or not, from making actual threats against the Chief Executive,* even without communicating them to him, as being calculated to inspire or encourage the hearers to attempt such acts." [Emphasis supplied.]

It would be going too far to say that judicial interpretation of a statute aimed at protecting the President should be used as the sole base to support the construction of a law proscribing the communication of a threat to one subject to the Code. But there are some similarities between the enactments which cause me to use the civilian cases as precedents. In addition, there are many good reasons why the military services should have an effective deterrent to discourage those individuals in the service who seek to destroy discipline and order by threatening injury with its concomitant inciting of others to do likewise. Basically, the necessity of maintaining law, order and

discipline in the services justified proscribing the utterance of threats, particularly to those individuals who are in the execution of military duties, and that without regard to the intent to inflict the injury threatened. We spoke of that in United States v Holiday, 4 USCMA 454, 16 CMR 28, when we said:

"Applying the test delineated in previous decisions of this Court, we find, in the communication of a threat to any person in the military establishment, direct and palpable prejudice to good order and discipline of the armed forces. Such conduct, if committed in the civilian community, might result in a criminal proceeding in which the guilty party would be required to furnish bond, or be imprisoned, in default thereof. Obviously no such sanction is put upon innocent actions. In the military service, the communication of a threat to injure another is certainly no less serious."

If that is the evil the law seeks to discourage, then specific intent should not be an essential element of the offence. In many instances, unless it is clearly evident to those who hear the threat that it is uttered in a spirit of jest, or frivolity, disorders and breaches of military discipline will probably follow. Certainly, the victim of the threat and the persons within hearing distance have little, if any, means of ascertaining the mental state of the one who threatens. The ultimate effect on them may be precisely the same whether or not the speaker intends to carry out the threat, as they have no way of ascertaining at the time when the words are uttered whether he is serious or merely bluffing. For that reason, I follow the doctrine that specific intent is not essential to this type of offense. Furthermore, when our cases are considered in the light of these arguments, it becomes apparent that the intent we were discussing in them is not the specific intent to execute the threat, but rather, the intent to utter the words spoken.

Thus far I have quoted from just two of our decided cases, but I have reason to believe others fortify the conclusions reached above. In United States v Rutherford, 4 USCMA 461, 16 CMR 35, the Chief Judge, in writing for a majority of the Court, held that there was no threat uttered by the accused, for his words disavowed any determination to injure. I find nothing in the language he used to support an interpretation that the opinion holds that the accused uttered a threat, but because the evidence failed to establish that he intended to execute it, the Government had failed to carry its burden. The real cause of our cleavage was over the issue of whether there was, in fact, any utterance of a purpose to do harm. The majority opinion reads:

"A threat is an avowed present determination or intent to injure presently or in the future. United States v Metzdorf, supra; United States v Sturmer, 1 USCMA 17, 1 CMR 17; United States v Holiday, supra. A careful analysis of the evidence in this case definitely establishes that no threat was made by the accused. All the witnesses agree that when the statements were made, the accused was in a highly emotional, almost irrational, state. And yet, he appreciated the possibility that he would injure his commanding officer unless forcibly restrained within a confinement facility. Each of his utterances was designed to convey this fear to his listeners. Rather than demonstrating 'an avowed present determination or intent to injure presently or in the future,' the accused's words and actions reveal a fixed purpose to avert such a result. Although such violent actions are hardly commendable, they do not constitute the offense of communicating a threat, for here no threat was made."

I dissented from that portion of the holding, but as I interpret my language, I was seeking to establish that the accused's statement, demeanor and behavior all pointed up the fact that the content of his utterance, even though he conditioned the statements upon a return to his unit, amounted to an avowed determination to injure his superior officer. This is my language:

"The Court's opinion defines a threat as an avowed present determination or intent to injure presently or in the future. My associates conclude the accused's words and actions reveal a fixed purpose to avert inflicting bodily harm on the officer and, therefore, no intent to injure. I reach a contrary conclusion. I gather from the quoted portions of the record and from the accused's pattern of behavior that there was an avowed present determination to inflict bodily harm on the commanding officer, and that unless the military complied with his demand he would carry out his expressed intent to kill."

If my previous writings convey the impression that I consider the law to be that an avowal of an intent to kill must be coupled with a specific intent to kill before the necessary elements of the offense can be establishd, then they do not express my convictions. In my previous writings, I intended to go no further than to express a belief that an utterance to a victim amounts to a threat if it was wrongful, without justification, and couched in appropriate terms. Of course, it is true that in most instances it will be found the words spoken are the best evidence of the mental state of the one uttering the threat, and that he has every intention of carrying out his avowal. That, however, merely strengthens the prosecution's case; its absence it not fatal to a finding of guilt.

In United States v Davis, 6 USCMA 34, 19 CMR 160, the issue was more sharply drawn. There we were confronted with a question of whether a defense was available to the accused if the facts reasonably raised an issue that the words were spoken in jest. In my opinion in that case I stated:

"When the instructions given by this law officer are broken down in their essential parts, the court-martial was required to find the following before a verdict of guilty could be returned: (1) that the threat was without justification or excuse; (2) that it was wrongful; (3) that it was made known to the victim; (4) that within its language the accused declared his purpose or intent to do an act which was wrongful, to wit: kill the victim. Those elements meet the test of our definition, and it is apparent that if the court-martial were to conclude that the accused wrongfully declared an intent to kill, it could not find that the words were spoken in jest or idle banter."

Neither of my associates concurred outright in the views I expressed in the above quotation, and, as a matter of information, the Chief Judge seems to have dissented. If so, he now joins me in holding that the issue which is presented when jest is interposed as a defense may be disposed of by a finding that the avowal was wrongful or without justification. Obviously, if that is the rule, the defense that the accused was only joking may negate specific intent, but it also negatives the element of wrongfulness. It would seem to follow that our holding, that if jest were raised reasonably by the evidence it was available as a defense, does not necessarily force a conclusion that we held specific intent was an element. While we may not have been overly careful in the choice of our language, I believe a close inspection of our decided cases will establish the proposition that when referring to intent or determination to injure, presently or in the future, we have invariably tied that ingredient in with an utterance by the accused and not with his intent to carry out his declared injury. Stated somewhat differently, we have stressed the utterance of the threat rather than any specific intent to carry it out. Summed up, we have carved out the rule that it is the audible pronouncement of an intent or determination to injure that constitutes the gravamen of the offense. In that setting, it matters not the purpose behind the declaration, so long as the words uttered could cause a reasonable person to believe that he was wrongfully threatened.