UNITED STATES, Appellee,

v.

Stephen D. ALFORD, Private
U.S. Army, Appellant.

No. 66,328.

CM 8903901.

U.S. Court of Military Appeals.

Argued Nov. 13, 1991.

Decided March 11, 1992.

For Appellant: *Captain Michael W. Meier* (argued); *Major Michael J. Kelleher* and *Captain Robin N. Swope* (on brief); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Alan M. Boyd,* and *Captain Michael J. Coughlin.*

For Appellee: *Captain Samuel J. Smith, Jr.* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Daniel J. Dell'Orto, Captain Kenneth T. Grant* (on brief); *Colonel Alfred F. Arquilla* and *Captain Donald W. Hitzeman.*

*Opinion of the Court*

EVERETT, Senior Judge:

On December 18, 1989, Private Stephen D. Alford was tried at Fort Carson, Colorado, by a military judge sitting as a general court-martial. Contrary to his pleas, he was found guilty of two specifications of assault and battery and one specification each of communicating a threat and disorderly conduct, in violation of Articles 128 and 134 of the Uniform Code of Military Justice, 10 USC §§ 928 and 934, respectively. The military judge sentenced appellant to a dishonorable discharge, confinement and total forfeitures for 18 months. The convening authority approved the sentence except for reducing the term of confinement by 15 days.

The Court of Military Review set aside the conviction of disorderly conduct; but, upon reassessment, it affirmed the approved sentence except for reducing the term of forfeitures by 15 days. 32 MJ 596 (1991). Thereafter, we granted review to consider this issue:

WHETHER THE EVIDENCE IS SUFFICIENT AS A MATTER OF LAW TO

SUPPORT THE FINDING OF GUILTY AS TO COMMUNICATING A THREAT (SPECIFICATION 3 OF CHARGE III). We now have determined that the evidence is sufficient.

## I

The offenses of which appellant stands convicted were committed while he was confined pursuant to a sentence adjudged by a special court-martial. Some other inmates, including Ciotti and Brandenburg, were watching a football game on television in the Fort Carson Detention Facility's housing unit, when Alford entered the room and changed the channel. Ciotti turned back the channel, and an argument erupted. Alford then took the knob off the television set and went to the back of the room for several minutes. Finally, Alford struck Ciotti three or four times with his fists, which left a knot on Ciotti's head. Later, Alford grabbed Ciotti around his throat; and, according to Ciotti, "[h]e left scratch marks on my throat. He was holding my throat pretty tight, and I was pretty scared. And to get him off of me I used my feet to push him off of me."

After this assault Alford told Ciotti, "[I]f I mentioned anything of this to any of the guards, about the incident, that he would put me in a body bag at Evans Community Hospital." Ciotti maintained that after Alford had threatened him, "I got up—I hollered guard, and no one came."

Prisoner Brandenburg, who also had been watching television, testified that Alford

explicitly told Ciotti that if he let any of this go anywhere beyond the housing unit, that he would make sure that he was put in the hospital. Or, if the accused go to CC for it, which is closed confinement, that he would make sure he was in the hospital longer than he was in closed confinement.

When asked to state "the exact words that the accused used when he made this threat," Brandenburg replied:

As best as I can recall, he said, "If you say anything, or if this goes anywhere beyond the housing unit, I'll make sure that you spend time in the hospital." I can't really recall, but I remember the gist of what was going on at the time that he said it. But, I can't recall exactly; but that's basically the best as I can remember what he said—I couldn't be exact though, sir.

Brandenburg also testified that Ciotti had told him that he had "call[ed] for a guard"; but he "did not hear anyone call for a guard at that time."

In his own defense, Alford testified that he never had touched Ciotti's throat and that the accounts given by Ciotti and Brandenburg were false. As to the alleged threat, he testified:

I threatened him when I hit him, sir, when we was pushing and shoving each other, and hitting each other, that's when I threatened him. I said, "Lucky I didn't put you in the hospital." There was nothing pertaining to the guard action, or nothing like that, sir.

## II

██ Communicating a threat—although not an offense at common law—has long been recognized as a violation of Article 134 of the Uniform Code of Military Justice. *United States v. Holiday*, 4 USCMA 454, 16 CMR 28 (1954). Guilt of the offense requires that the accused communicate "certain language expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently or in the future." Para. 110b(1), Part IV, Manual for Courts–Martial, United States, 1984. It is unnecessary that the accused actually intend to carry out the threat; but no crime is committed if all the "circumstances ... so belie or contradict the language of the declaration as to reveal it to be a mere jest or idle banter." *See United States v. Gilluly*, 13 USCMA 458, 461, 32 CMR 458, 461 (1963).

██ Appellant contends that his statement was conditional in nature and so did not express a present intent to inflict injury

on Ciotti. However, Alford had "no right to impose" any condition on Ciotti's reporting his misconduct; and imposition of a wrongful condition "does not negative a present determination to injure." *See United States v. Holiday, supra* at 459, 16 CMR at 33; *United States v. Shropshire,* 20 USCMA 374, 375, 43 CMR 214, 215 (1971).

■ If the threatened injury is stated to be contingent on the occurrence of some event that obviously cannot take place, an accused is not criminally liable. Thus, in *United States v. Shropshire, supra* at 375, 43 CMR at 215, the conviction for communicating a threat was set aside because it was clear that the contingency imposed by the accused would never be fulfilled. *Id.* at 376, 43 CMR at 216. *See also United States v. Gionfriddo,* 39 CMR 602, 607 (ABR 1968); *United States v. Nicolas,* 14 CMR 683, 690 (AFBR 1954); *United States v. Douglas,* 9 CMR 619, 622 (CGBR 1953). However, instead of being impossible of fulfillment, the condition contained in Alford's threat to Ciotti could be reasonably complied with. All that was required was for Ciotti to tell the guards—who were readily available in the Detention Facility—that he had been attacked by Alford.[1]

If Alford's language had been less explicit, we might confront an issue of whether to use an objective or subjective test in determining whether the words uttered constituted a threat. In short, would it suffice for guilt that Ciotti genuinely believed that Alford's words were a threat or would it be required for guilt that the factfinder be convinced that a reasonable person would construe the language as a threat? Here, however, Alford's meaning was perfectly clear to Ciotti and to others who witnessed the incident—namely, that appellant intended to injure Ciotti seriously if Ciotti made a report to confinement officials.

Thus, this case is quite distinguishable from *United States v. Batdorf,* ACMR 8801445 (decided December 23, 1988) (unpublished),[2] where the accused had said "that he was so mad that he could kill" a named captain and "that he might come back and shoot" the captain. There the court held, "as a matter of law, that the language used by the accused" was "not sufficiently definite or certain to meet" the requirements of a threat. Unpub. op. at 1.

Alford relies especially on *United States v. DeMello,* ACMR 8901251 (decided October 20, 1989) (unpublished), where the alleged threat was, "[I]f you ever say anything racial to me again, I—I'll kill you." There the accused had pleaded guilty. However, on appeal "the government agree[d] with" his "contention that the plea[s]" had been "improvident because the" accused "did not express a present determination or intent to kill as alleged." The Court of Military Review stated:

> Under the circumstances present in the record, we have a reasonable doubt that the appellant manifested a present determination to kill or injure the soldier. *See* Manual for Courts–Martial, United States, 1984, Part. IV, para. 110c; *United States v. Gilluly,* [13 USCMA 458, 461,] 32 CMR 458, 461 (1963). The appellant appeared to be communicating a fervent desire for the other soldier to stop his provoking remarks.

Unpub. op. at 1–2. Apparently, the court was exercising its factfinding powers, Art. 66(c), UCMJ, 10 USC § 866(c), rather than determining legal sufficiency. Moreover, the Court of Military Review did not specify the circumstances it relied on.

Thus, *DeMello* does not provide us guidance for the present case, because here appellant did express clearly a present determination wrongfully to injure Ciotti's person. This intent, communicated directly and explicitly to Ciotti, is fully sufficient to

---

1. Ciotti testified that he had yelled for a guard but none had come. However, it is irrelevant whether he defied the threat or succumbed to it. In either instance, appellant was guilty of communicating the threat.

2. *See* Rule 24(a) Appendix, Rules of Practice and Procedure, United States Court of Military Appeals.

establish guilt of communicating a threat in violation of Article 134.

## III

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judge COX concur.

Judges CRAWFORD, GIERKE, and WISS did not participate.