UNITED STATES, Appellee

v.

Ronnie D. PHILLIPS, Staff Sergeant
U.S. Air Force, Appellant.

No. 93–0881.
CMR No. 29463.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 10, 1995.

Decided June 12, 1995.

For Appellant: *Captain Mark J. Simms*
(argued); *Colonel Jay L. Cohen and Captain
Robert A. Parks* (on brief); *Colonel Terry J.
Woodhouse and Lieutenant Colonel Frank J.
Spinner.*

For Appellee: *Colonel Thomas E. Schlegel*
(argued); *Colonel Jeffery T. Infelise and
Captain Jane M.E. Peterson (on brief);
Colonel Richard L. Purdon.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

1. Appellant was tried by a general court-martial composed of officer members at Lackland Air Force Base, Texas, in July of 1991. Contrary to his pleas, he was found guilty of failure to obey Air Force Training Command Regulation 30–4 (3 specifications), communicating a threat, and adultery (2 specifications), in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 USC §§ 892 and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 2 years, and reduction to E–1. On August 27, 1991, the convening authority approved the sentence. The Court of Military Review[1] affirmed this action on March 17, 1993.

2. On September 24, 1993, this Court granted review on the following issue of law raised by appellate defense counsel:

WHETHER THERE WAS INSUFFICIENT PROOF OF A COMMUNICATION OF A THREAT TO AIRMAN DAWSON (CHARGE II, SPECIFICATION 1) WHERE SOLE WITNESSES REESE AND DAWSON TESTIFIED THAT APPELLANT NEVER THREATENED AIRMAN DAWSON'S PERSON OR REPUTATION, SPOKE IN A NORMAL TONE OF VOICE, NEVER MENTIONED "RECYCLING," AND THE WORDS SPOKEN NEGATE A THREAT.

We hold that the evidence of record is legally sufficient to support appellant's conviction for communicating a threat, in violation of Article 134. *See United States v. Alford,* 34 MJ 150 (CMA 1992); *United States v. Shropshire,* 20 USCMA 374, 43 CMR 214 (1971). *See generally Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

3. According to Airman Dawson's testimony, the charged communication occurred on the fifth day of Airman Dawson's basic training after appellant, her training instructor, observed Airman Reese talking to Airman Dawson. Airman Dawson testified on direct examination as follows:

Q: All right. Now what happened after she [Airman Reese] told you about this relationship with Sgt Phillips?

A: She and he talked for a while, I left, she ended up leaving. I saw him later on over in the movie theater. He called me up to him and asked me what she had told me, and she had told me not to say anything, so I told him I didn't know anything.

Q: All right.

A: And he said, no, I know she told you something. What did she tell you? And that's when I told him what she told me.

Q: Okay. What specifically did you say?

A: I said that she told me that he was married, he had two kids, and that she and he had got together a couple of nights. That's how I phrased it.

Q: *All right. Now, when you had told him exactly what you knew about this, what did he do?*

A: He went like this (demonstrating), and then *he told me to keep my damn mouth shut and I'd make it through basic training just fine.*

MJ: For the record, you said something about he went like this?

A: Like this.

ATC: Let the record reflect that she's nodding her head up and down.

MJ: Okay, thank you.

Continued Direct Examination by [assistant trial counsel]:

Q: All right. Now, at the time he said this to you, what was going through your mind at the time when he said this to you, keep your damn mouth shut and you'll make it through basic training just fine?

A: I was glad because I wasn't planning on saying anything anyway so—

Q: Well—I'm sorry, go ahead.

1. *See* 41 MJ 213, 229 n. * (1994).

A: So I knew I was going to make it through with no trouble and I was going to graduate on time.

Q: *All right. Now, what would have happened in your mind if you had told anybody about what he told you—about this relationship, what would have happened to you, in your mind?*

A: *In my mind, I thought I was almost positive I would have gotten recycled.*

Q: Did you ever tell anybody about this statement that he made to you?

A: Not that I remember. I don't know.

Q: And why wouldn't you have told anybody?

A: *Because I was scared. We were only in day 5.*

Q: *And why were you scared?*

A: *Because we were new trainees and all we had been hearing so far was if you mess up, if you tell, you know, if you do something, you're going to get recycled, so I wasn't going to say anything anyway.*

(Emphasis added.)

---

4. Communicating a threat is a violation of Article 134 of the Code. *See generally Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). The elements of this offense as explained by the President in the Manual for Courts–Martial, United States, 1984, are:

(1) That the accused *communicated certain language expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently or in the future;*

(2) That the communication was made known to that person or to a third person;

(3) That the communication was wrongful; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 110b, Part IV, Manual, *supra* (emphasis added). *See generally United States v. Holiday*, 4 USCMA 454, 16 CMR 28 (1954).

In this case, we must determine whether a rational factfinder, "viewing the evidence in the light most favorable to the prosecution," could find beyond a reasonable doubt that appellant's language constituted a threat as defined above. *See United States v. Cotton*, 40 MJ 93, 95 (CMA 1994). *See generally Jackson v. Virginia, supra* at 319, 99 S.Ct. at 2789.

5. Appellant contends that the evidence of his guilt of this offense was legally insufficient. *Id.* He initially asserts that the statement "keep [your] damn mouth shut and [you'll] make it through basic training just fine" is not a threat but a promise of future benefit. Final Brief at 8. He further argues that a finding of an implied threat in these words requires impermissible consideration of circumstances outside the language of the communication. He states that "it is wholly dependent for any kind of threatening import upon the subjective determination of an inverse contingency. In other words, devoid of interpretation and expansion, the words themselves contain no threat." Final Brief at 6. We disagree with his narrow approach to the question and his resulting conclusion.

6. Long ago in *United States v. Holiday*, 4 USCMA at 456, 16 CMR at 30, this Court commented on the threat required for conviction under Article 134:

As used in both military and civilian law, the term "threat" connotes:

"An avowed present determination or intent to injure presently or in the future." [*United States v. Metzdorf*, 252 Fed. 933 (Mont [1918]); *United States v. Sturmer*, 1 USCMA 17, 1 CMR 17.]

7. Moreover, this Court later held that the existence of a threat required consideration of both the language of the communication and all the circumstances surrounding it. In *United States v. Gilluly*, 13 USCMA 458, 461, 32 CMR 458, 461 (1963), we said:

The intent which establishes the offense is that expressed in the language of the declaration, not the intent locked in the mind of the declarant. *United States v. Humphrys*, 7 USCMA 306, 307, 22 CMR 96. Thus, the presence or absence of an actual

intention on the part of the declarant to effectuate the injury set out in the declaration does not change the elements of the offense. This is not to say the declarant's actual intention has no significance as to his guilt or innocence. A statement may declare an intention to injure and thereby ostensively establish this element of the offense, *but the declarant's true intention, the understanding of the persons to whom the statement is communicated, and the surrounding circumstances may so belie or contradict the language of the declaration as to reveal it to be a mere jest or idle banter.* United States v Humphrys, supra, page 307. *Ragansky v. United States,* 253 Fed 643 (CA 7th Cir) (1918). (Emphasis added.)

8. Finally, in *United States v. Shropshire,* 20 USCMA 374, 43 CMR 214(1971), this Court clearly indicated that the existence of a threat should be evaluated from the point of view of a reasonable man. The Court said:

> If the accused in the instant case had said, "When I get this restraining gear off I will show you what I'll do," we would have no difficulty in agreeing that the condition was one reasonably possible of fulfillment. But when he used the words, "if you take this restraining gear off," we believe he indicated a limitation on the period within which he would effectuate his words and that no reasonable guard would have removed the restraining gear in order to permit an attack on himself. *The words were more braggadocio than a threat of a kind that a reasonable member of the armed forces should be concerned about.* The words uttered expressed a contingency that neutralized the declaration, since there was not a reasonable possibility the uncertain event would happen.

20 USCMA at 375–76, 43 CMR at 215–16 (emphasis added). *See also Watts v. United*

*States,* 394 U.S. 705, 708, 89 S.Ct. 1399, 1401–02, 22 L.Ed.2d 664 (1969) ("Taken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners, we do not see how it could be interpreted otherwise [than as "a kind of very crude offensive method of stating a political opposition to the President"].") [2]

9. Appellant accepts a reasonable-man approach to determine the existence of a threat but argues that only the literal meaning of the words can be considered. Semantics alone, however as indicated above, do not determine whether a threat has been made. *See United States v. Cotton,* 40 MJ at 95. Moreover, it was the factfinder's responsibility to determine, based on all the circumstances of this case, whether appellant's words reasonably conveyed a threat rather than solicitation of a bribe. Our only concern is whether a reasonable factfinder could conclude beyond a reasonable doubt that a reasonable person in the recipient's place would perceive the contested statement by appellant to be a threat. *United States v. Gilluly, supra. See United States v. Hoffman,* 806 F.2d 703, 708 (7th Cir.1986), *cert. denied,* 481 U.S. 1005, 107 S.Ct. 1627, 95 L.Ed.2d 201 (1987); *United States v. Roberts,* 915 F.2d 889, 890–91 (4th Cir.1990), *cert. denied,* 498 U.S. 1122, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991).

10. Applying this test to this case, we initially note that evidence was admitted that appellant demanded Airman Dawson speak to him despite her efforts to avoid talking to him. Moreover, upon receiving her response concerning her knowledge of his affair, he indirectly cursed her. Additional evidence was admitted that appellant was Airman Dawson's training instructor and that he was known to be fully capable of making sure she didn't get through basic training or that she would have a very hard time getting through. Airman Dawson also testified that the trainees had been repeated-

2. The so-called objective approach to the question of the threat required for a criminal conviction is consistent with paragraph 110c, Part IV, Manual for Courts–Martial, United States, 1984, and the position of numerous courts of appeals. *United States v. Darby,* 37 F.3d 1059, 1065, 1067 (4th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1826, 131 L.Ed.2d 747 (May 1, 1995);

*United States v. DeAndino,* 958 F.2d 146, 148 (6th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 2997, 120 L.Ed.2d 874 (1992); *United States v. Manning,* 923 F.2d 83, 85 (8th Cir.), *cert. denied,* 501 U.S. 1234, 111 S.Ct. 2860, 115 L.Ed.2d 1027 (1991); *United States v. Gordon,* 974 F.2d 1110, 1117 (9th Cir.1992); *United States v. Kosma,* 951 F.2d 549, 555 (3d Cir.1991).

ly warned that being forced to re-start basic training was a very real possible consequence to any "mess[ing] up." We finally note that, although there is no evidence that appellant raised his voice or threatened Airman Dawson physically, there is also no evidence that appellant used a facetious tone or otherwise indicated that he was joking. Viewing this record in the light most favorable to the Government, we conclude that it is legally sufficient to support the conclusion that appellant's words constituted an implied threat of training camp failure. *See United States v. Schweihs*, 971 F.2d 1302, 1325 (7th Cir. 1992).[3]

■ 11. Alternatively, appellant contends that, even if his language may have implicitly communicated a threat, it was not a criminally punishable threat because it was conditioned on a circumstance that could not occur. *See United States v. Cotton*, 40 MJ at 95, citing *United States v. Shropshire*, 20 USCMA 374, 43 CMR 214(1971). We have held that "[i]f the threatened injury is stated to be contingent on the occurrence of some event that obviously cannot take place, an accused is not criminally liable." *United States v. Alford*, 34 MJ at 152; *see also United States v. Cotton* and *United States v. Shropshire*, both *supra*. More particularly, no criminal threat occurs if there was no reasonable possibility that the event upon which the threat was conditioned would ever happen. *United States v. Shropshire, supra. See generally United States v. Cox*, 957 F.2d 264, 266 (6th Cir.1992).

12. Two cases demonstrate the proper application of this principle of law. In *Shropshire*, an accused was charged with

threatening his jail keeper. We concluded that the condition of his putative threat, namely "if you take this restraining gear off," was impossible and negated any threat. 20 USCMA at 375–76, 43 CMR at 215–16. There was no reasonable possibility that a guard would remove the restraints so the prisoner could attack him. On the contrary, in *United States v. Alford*, 34 MJ at 152, there was a reasonable possibility that the prisoner would report an assault by a fellow inmate to the guard because the guards were easily accessible and all he had to do was tell them of the attack. There we concluded that the condition or contingency was not impossible and did not negate the threat of a fellow prisoner of putting the victim "in a body bag" at a local hospital. *Id.* at 151.

■ 13. The status of the contingency in appellant's case is similar to that in *Alford.* Airman Dawson was a trainee on an Air Force base, and she had ready access to the security police and to appellant's superiors if she had chosen to report his misconduct. Furthermore, although she might not be inclined to discuss this matter, there was no reason proferred which would have prevented her from discussing appellant's affair with fellow trainees or other friends. Accordingly, the condition for the threat, *i.e.*, her discussing his misconduct, was reasonably possible and appellant's threat was not negated. Sufficient evidence of guilt existed in this case.

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.

3. Appellant agrees that an objective standard should be used to determine whether his words constituted a threat within the meaning of Article 134, Uniform Code of Military Justice, 10 USC § 934, and paragraph 110, Part IV, Manual, *supra*. He alternatively argues that, if his words are evaluated subjectively from the point of view of the victim, no threat can be reasonably found in this case. We disagree. Private Dawson's incredulous conclusion that she was relieved by appellant's words was not binding on the factfinder. *See United States v. Local 1804–1 International Longshoremen's Ass'n*, 753 F.Supp. 1158, 1165 (S.D.N.Y.1990), citing *United States v. DeLutro*, 435 F.2d 255, 256–57 (2d Cir.1970), *cert. denied*, 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971).