Judge STUCKY,
with whom Judge RYAN joins, dissenting.
As a general rule, “a guilty mind is. ‘a necessary element in the indictment and proof of every crime.’” Elonis v. United States, — U.S. -, 135 S.Ct. 2001, 2009, 192 L.Ed.2d 1 (2015) (quoting United States v. Balint, 258 U.S. 250, 251, 42 S.Ct. 301, 66 L.Ed. 604 (1922)); accord United States v. Thomas, 65 M.J. 132, 133 (C.A.A.F.2007). The majority concludes that the term “wrongful,” as used in the third element of the offense of communicating a threat, has always required that an accused possess a guilty mind. United States v. Rapert, 75 M.J. 164, 169 (C.A.A.F.2016). I disagree with the majority’s interpretation and its resulting affirmance of the decision of the United States Army Court of Criminal Appeals. Accordingly, I respectfully dissent.
I.
The principal issue in this case arises from the Supreme Court’s recent decision in Elon-is. At its heart, Elonis is a reiteration of a longstanding principle of statutory interpretation of federal criminal statutes: “ ‘wrongdoing must be conscious to be criminal.’ ” 135 S.Ct. at 2012 (quoting Morissette v. United States, 342 U.S. 246, 252, 72 S.Ct. 240, 96 L.Ed. 288 (1952)). This means that a “ ‘presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct,’ ” id. at 2011 (quoting United States v. X-Citement Video, Inc., 513 U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994)) (emphasis in original), and, “when interpreting federal criminal statutes that are silent on the required mental state, [the Court] read[s] into the statute only that mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct.” Id. at 2010 (citations omitted) (internal quotation marks omitted); accord Staples v. United States, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). This presumption can, however, be overcome in certain situations. See Elonis, 135 S.Ct. at 2008-09 (explaining that Congress can “mean [] to exclude a requirement that a defendant act with a certain mental state,” but there must be evidence of such an intent); Liparota v. United States, 471 U.S. 419, 427, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1986) (“Congress could have intended that [a] broad range of conduct be •made illegal— However, given the paucity of material suggesting that Congress did so intend, we are reluctant to adopt such a sweeping interpretation”) (emphasis in original); Balint, 258 U.S. at 251-53, 42 S.Ct. 301 (finding that the general presumption of a *174 scienter requirement in criminal statutes is not necessarily applicable to regulatory or public welfare offenses, where “social betterment” and “proper care” are the goals, as opposed to punishment).
Given the well-established nature of the aforementioned principle of statutory interpretation, any novelty in Elonis emanates from the Supreme Court’s application of this principle to the federal statute criminalizing the “transmi[ssion] in interstate or foreign commerce [of] any communication containing any threat to kidnap any person or any threat to injure the person of another.” 18 U.S.C. § 875(c) (2012). This federal offense is strikingly similar to the crime of communicating a threat under Article 134, Uniform Code of Military Justice, (UCMJ), 10 U.S.C. § 934 (2012); Manual for Courts-Martial, United States (MCM) pt. IV, ¶ 110.b. (2012 ed.).
The conviction in Elonis was overturned because:
[t]he jury was instructed that the Government need prove only that a reasonable person would regard Elonis’s communications as threats, and that was error. Federal criminal liability generally does not turn solely on the results of an act without considering the defendant’s mental state.
135 S.Ct. at 2012. The Supreme Court further found that:
[h]aving liability turn on whether a “reasonable person” regards the communication as a threat—regardless of what the defendant thinks—“reduces culpability on the all-important element of the crime to negligence,” [United States v. Jeffries, 692 F.3d 473, 484 (6th Cir.2012) (Sutton, J., dubitante) ], and we “have long been reluctant to infer that a negligence standard was intended in criminal statutes.”
Id. at 2011 (quoting Rogers v. United States, 422 U.S. 35, 47, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975) (Marshall, J., concurring) (citing Mor-issette)).
Our task is therefore to determine whether the crime of communicating a threat under Article 134, UCMJ, has turned on a mens rea standard of negligence and, if so, to gauge whether the principle reiterated in Elonis leads us to reinterpret the level of mens rea required for a finding of guilt.
II.
The majority correctly notes that the offense of communicating a threat under Article 134, UCMJ, contains four elements:
(1) That the accused communicated certain language expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently or in the future;
(2) That the communication was made known to that person or to a third person;
(3) That the communication was wrongful; and
(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
MCM pt. IV, ¶ llO.b. However, it incorrectly concludes that the third element has always required a level of mens rea beyond negligence on the part of an accused.
The majority contends that the third element should be read to require “[t]hat the communication was wrongful in that the speaker intended the statements as something other than a joke or idle banter, or intended the statements to serve something other than an innocent or legitimate purpose.” Rapert, 75 M.J. at 169. Yet we have never held that any of this offense’s elements include a mens rea requirement beyond negligence.
Loolong simply at statutory language, the crime requires only that the accused wrongfully express a present determination or intent to injure a person, property, or reputation. MCM pt. IV, ¶ llO.b. We have found that an individual may be convicted when “a reasonable factfinder could conclude beyond a reasonable doubt that a reasonable person in the [hearer’s] place would perceive the contested statement by appellant to be a threat.” United States v. Phillips, 42 M.J. 127, 130 (C.A.A.F.1995); accord United States v. Greig, 44 M.J. 356, 358 (C.A.A.F.1996). We have further held that “a specific *175 intent on the part of the accused is not itself an element of the offense,” United States v. Humphrys, 7 C.M.A. 306, 308, 22 C.M.R. 96, 98 (1956), and that “once it clearly appears that a person subject to the Code has announced an avowed present determination or intent to injure presently or in the future, the offense is complete.” United States v. Rutherford, 4 C.M.A 461, 462, 16 C.M.R. 35, 36 (1954). The fact that a communication must be wrongful has never been held to add a mens rea requirement beyond negligence to this offense.
As far as the context and surrounding circumstances of a statement, the MCM states that:
it is not necessary that the accused actually intended to do the injury threatened. However, a declaration made under circumstances which reveal it to be in jest or for an innocent or legitimate purpose, or which contradict the expressed intent to commit the act, does not constitute this offense.
MCM pt. IV, ¶ llO.c. And our case law expounds on this:
The words communicated certainly matter because they are the starting point in analyzing a possible threat. But words are used in context. Divorcing them from their surroundings and their impact on the intended subject is illogical and unnatural. Legal analysis of a threat must take into account both the words used and the surrounding circumstances.
United States v. Brown, 65 M.J. 227, 231-32 (C.A.A.F.2007); accord United States v. Wartsbaugh, 21 C.M.A. 535, 537-38, 45 C.M.R. 309, 311-12 (1972). The term “circumstances” allows for the relevance of an accused’s mental state, but does not, as the majority claims, institute a mens rea requirement. Rapert, 75 M.J. at 169 (quoting United States v. King, 34 M.J. 95, 97 (C.M.A.1992) (“The wrongfulness of the act obviously relates to mens rea ... and lack of a defense, such as excuse or justification”) (emphasis added)). Rather, a “declarant’s trae intention, the understanding of the persons to whom the statement is communicated, and the surrounding circumstances may ... reveal it to be a mere jest or idle banter.” United States v. Gilluly, 13 C.M.A. 458, 461, 32 C.M.R. 458, 461 (1963). In this way, mens rea, essentially as part of the surrounding circumstances, can reveal the nonthreatening nature of an ostensibly threatening statement to a reasonable hearer. And the edition of the Military Judges’ Benchbook in circulation at the time of trial implements this understanding:
A statement made under circumstances which reveal it to be in jest or for an innocent or legitimate purpose which contradicts the expressed intent to commit the act is not wrongful.... Consequently, if .the evidence indicates any such defense, the military judge must, sua sponte, instruct carefully and - comprehensively on the issue.
Dep’t of the Army, Pam. 27-9, Legal Services, Military Judges’ Benchbook ch. 3, ¶ 3-110-1 (2010) (emphasis added). Certain mental states on the part of an accused can help negate criminality, but they are not positive requirements for criminality.
Our case law further implements the interpretation that criminality is determined by the perception of the reasonable hearer— which can be influenced by external circumstances surrounding an accused’s statement (including his mens rea). I have not found a case of ours holding that a mens rea requirement beyond negligence is an element of the communicating a threat offense, much less as part of the “wrongful” element. Nor have I found a case involving this crime in which we have not based our findings solely on the perception of a reasonable hearer. See Brown, 65 M.J. at 232; United States v. Ogren, 54 M.J. 481, 486-87 (C.A.A.F.2001); Greig, 44 M.J. at 358; Phillips, 42 M.J. at 130; United States v. Cotton, 40 M.J. 93, 95 (C.M.A.1994); United States v. Shropshire, 20 C.M.A. 374, 375, 43 C.M.R. 214, 215 (1971); Gilluly, 13 C.M.A at 460-61, 32 C.M.R. at 460-61; United States v. Sulima, 11 C.M.A. 630, 633, 29 C.M.R. 446, 449 (1960); Humphrys, 7 C.M.A at 307-08, 22 C.M.R. at 97-98; Rutherford, 4 C.M.A. at 462, 16 C.M.R. at 36. As such, Judge Latimer’s concurrence in the result of Humphrys deftly encapsulates this Court’s consistent *176 understanding of the communicating a threat offense:
Summed up, we have carved out the rule that it is the audible pronouncement of an intent or determination to injure that constitutes the gravamen of the offense. In that setting, it matters not the purpose behind the declaration, so long as the words uttered could cause a reasonable person to believe that he was wrongfully threatened.
7 C.M.A. at 312, 22 C.M.R. at 102 (Latimer, J., concurring in the result) (emphasis added).
This is not to say that we have previously been unwilling to ascribe a mens rea requirement' to the term “wrongful” in the context of other offenses. E.g., United States v. Thomas, 65 M.J. 132, 133-35 (C.A.A.F.2007) (finding that the word “wrongful" within the wrongful use, possession, etc., of controlled substances offense under Article 112(a), UCMJ, creates a requirement that an accused knew of the physical presence of the offending substance, knew of its contraband nature, and knew that he was entering a military installation). But this practice has been the exception, not the rule.
The UCMJ and the explanations of Article 134 offenses in the MCM are littered with the term “wrongful.” The word, however, is predominantly defined to mean either “without legal justification or excuse” or “contrary to law, regulation, lawful order, or custom” and is placed alongside a specified mens rea requirement, if there is one. E.g., Article 109, UCMJ, 10 U.S.C. § 909 (2012); MCM pt. IV, ¶¶ 33, 34, 68.b, 86; Article 110, UCMJ, 10 U.S.C. § 910 (2012). Moreover, whether a statement is uttered in jest or for an innocent or legitimate purpose is treated as a defense in the Military Judges’ Bench-book, not a mens rea requirement attaching to the word “wrongful.” Military Judges’ Benchbook at ch. 3, ¶ 3-110-1. For these reasons, when interpreting the word “wrongful” to require a level of mens rea higher than that provided in the statute (or offenses created by the President under Article 134, UCMJ),- our custom has been to acknowledge the novelty of such action and assess lower courts’ rulings with this in mind. E.g., Thomas, 65 M.J. at 135; United States v. Mance, 26 M.J. 244, 254-56 (C.M.A.1988), overruled on other grounds by United States v. Payne, 73 M.J. 19 (C.A.A.F.2014) (acknowledging the novelty of the interpretation that a “knowledge” mens rea standard attaches to the offense at issue through the term “wrongful”).
In light of the consistent interpretations noted above, and given that this case was conducted as a bench trial and that “Military judges are presumed to know the law and to follow it absent clear evidence to the contrary,” United States v. Erickson, 65 M.J. 221, 225 (C.A.A.F.2007), we must presume that the military judge applied a negligence standard in determining whether Appellant possessed the requisite mens rea at the time of his offending conduct. Such an assumption is further supported by the fact that the specification under which Appellant was charged contains no mention of a mens rea requirement, and the edition of the Military Judges’ Benchbook in circulation at the time of trial did not instruct the military judge to apply one. Military Judges’ Benchbook, ch. 3, ¶ 3-110-1. The majority therefore incorrectly ascribes the power of clairvoyance to the military judge in determining that he applied a then-nonexistent legal standard at trial. While we should certainly presume that military judges know and follow the law, they do so with regard to the law as it is when the case is tried. To presume that they can divine and apply future legal interpretations is an impractical proposition.
HI.
Aside from the majority’s error in not acknowledging the novelty of their reinterpretation of the elements of the communicating a threat offense and its enhancement of the mens rea requirement, there are additional problems with the specific language it uses to define the term “wrongful.”
Foremost, the majority presents its definition entirely in negative form, making it unnecessarily convoluted. The first part of the majority’s definition requires “that the speaker intended the statements as some *177 thing other than a joke or idle banter.” Rapert, 75 M.J. at 169. The language merely declares that those who intend their statements as jokes or idle banter are not guilty of this offense. It avoids the gravamen of the crime by failing to specify the level of mens rea required of an accused in communicating a threat, and negligent criminality is not ruled out. Even if the speaker’s mens rea is negligence, any utterance that communicates a threat could still be criminal so long as the speaker’s words were not intended as a joke or idle banter. For example, a statement by a frustrated individual, who possesses no actual awareness of the risk that his words will be construed as threatening and with no intent to communicate a threat, could still be perceived by a reasonable hearer as a threat. Such a negligent statement would be intended as neither a joke nor idle banter but may be criminal under the first part of the majority’s definition of “wrongful.”
The second part of this definition requires that the speaker “intended the statements to serve something other than an innocent or legitimate purpose.” Id. Put in its positive form, this passage spares criminal liability for those who intend their statements to serve an innocent or legitimate purpose. Presumably, this includes declarations intended as jokes or idle banter. It likely also encapsulates those spoken with the intent to carry out a special defense—i.e., submit to duress or engage in self-defense. But, more broadly, what is an innocent or legitimate purpose under an offense that criminalizes threatening language? Seemingly, it is any other purpose than communicating a threat. If we are to look to the purpose for which language is spoken to determine criminality, we cannot legitimately criminalize language with a purpose other than that targeted by the offense. This would mean that the majority is implementing a purposeful mens rea requirement for the communicating a threat offense: in order to be found guilty, an individual must speak with the purpose of communicating a threat. See Model Penal Code § 1.13(12) (Am, Law Inst., Proposed Official Draft 1962) (“ ‘[Ijntentionally’ or ‘with intent’ means purposely”).
There are two striking problems with such a requisite mens rea. First, this is an incredibly high bar for prosecution given that
[a] person acts purposely with respect to a material element of an offense, when:
(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result.
Model Penal Code § 2.02(2)(a). It is a substantial leap beyond the negligence standard that the communicating a threat offense has carried throughout its entire existence.
Second, in Elonis, the Supreme Court specifically stated that possession of a less demanding mens rea suffices for an individual to be found guilty of the comparable communicating a threat offense under § 876(c):
There is no dispute that the mental state requirement in Section 876(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat.
135 S.Ct. at 2012 (emphasis added); see also Model Penal Code § 2.02(2)(b) (“A person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result”).
On top of the striking problems inherent within the language of the majority’s definition of “wrongful,” there are additional conspicuous issues with how the majority chose this language. Given the absolute absence of support for its assertion that the term “wrongful” within the communicating a threat offense has always included a mens rea requirement beyond negligence, the majority is forced to overtly misinterpret and misapply military law.
The first half of the majority’s definition— “the speaker intended the statements as something other than a joke or idle banter,” Rapert, 75 M.J. at 169—is lifted partly from the MCMs, explanation of the communicating *178 a threat offense and partly from our case law. MCM pt. IV, ¶ 110.c. (“[A] declaration made under circumstances which reveal it to be in jest ... does not constitute this offense”); Cotton, 40 M.J. at 95 (“Even when the literal language appears to constitute a threat, ‘the surrounding circumstances may so belie or contradict the language of the declaration as to reveal it to be a mere jest or idle banter* ”) (quoting Gilluly, 13 C.M.A. at 461, 32 C.M.R. at 461). But these sources use this language in reference to the impact of an accused’s statements on a reasonable hearer, not to explain an additional offense element requiring a mental state on the part of an accused other than negligence. The surrounding circumstances—including the speaker’s subjective mindset—can reveal to a reasonable hearer that a statement is a joke or idle banter.
The second half of the majority’s definition—“or [the speaker] intended the statements to serve something other than an innocent or legitimate purpose,” Rapert, 75 M.J. at 169—is derived entirely from the MCM’s explanation of the communicating a threat offense. MCM pt. IV, ¶ 110.c. (“[A] declaration made under circumstances which reveal it to be ... for an innocent or legitimate purpose ... does not constitute this offense”). Again, this language allows an innocent or legitimate purpose to be revealed to a reasonable hearer through surrounding circumstances, which can include a declarant’s mental state but does not require it as an element of the offense. Greig, 44 M.J. at 358 ("[T]he reference to innocent or legitimate purpose does not delineate the elements of the offense; rather, it is a reference to the surrounding circumstances [which] may so belie or contradict the language of the declaration as to reveal it to be a mere jest or idle banter”) (internal quotation marks omitted) (emphasis added).
IV.
As noted above, under the principle of statutory interpretation i’ecounted in Elonis, we must first determine whether the offense turns on a negligence mens rea standard and then, if so, whether we should heighten this standard so as “to separate wrongful conduct from otherwise innocent conduct.” 135 S.Ct. at 2010 (citations omitted) (internal quotation marks omitted).
Analogous to § 875(c) under the federal criminal code, communicating a threat has historically only required negligence on the part of an accused in order to be convicted. If a reasonable person in the hearer’s place would perceive the accused’s contested statement as a threat, then the accused has satisfied this requirement. E.g., Phillips, 42 M.J. at 130. And given the Supreme Court’s clear language with respect to § 875(c) and this section’s stark similarity to the military’s communicating a threat offense, I find Elonis to be a highly persuasive authority. I would therefore interpret a mens rea requirement beyond negligence to be present within the offense.
In determining the proper level of mens rea required of an accused to criminally communicate a threat, I agree with Justice Ali-to’s concurrence in part and dissent in part in Elonis:
Once we have passed negligence ... no further presumptions are defensible. In the hierarchy of mental states that may be required as a condition for criminal liability, the mens rea just above negligence is recklessness.... [W]hen Congress does not specify a mens rea in a criminal statute, we have no justification for inferring that anything more than recklessness is needed_ Once we have reached recklessness, we have gone as far as we can without stepping over the line that separates interpretation from amendment.
135 S.Ct. at 2015 (Alito, J., concurring in part and dissenting in part). Under a recklessness standard, an accused must have at least been aware of the risk that he was communicating a threat and ignored such risk. See id. (citing Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Model Penal Code § 2.02(2)(c)). To the extent it can be construed as instituting a mens rea standard beyond recklessness, the majority opinion is inappropriately legislating.
*179 As for the matter of in which element of the offense this mens rea requirement should be placed, it should be located within the first element. This is where the core of the offensive conduct is outlined, to which any mens rea standard must be applied. Moreover, as presented above, “wrongful” has a historical and widespread meaning that does not include a mens rea requirement. The first element of this offense should therefore read as follows:
That the accused [recklessly] communicated certain language expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently or in the future.
V.
In summation, the majority’s interpretation of the term “wrongful”—which adds a mens rea element to the offense of communicating a threat—is incorrect. The majority has instituted a novel interpretation of the word “wrongful” and improperly assumes that the military judge intuited and applied this new legal standard. Moreover, the majority’s definition of “wrongful,” in addition to being imprecise, appears to place too high of a burden on prosecution by requiring an accused to possess a purposeful mens rea in order to be convicted of communicating a threat. As such, I reiterate my disagreement with the decision of this Court.