UNITED STATES, Appellee

v.

Jerry L. COTTON, Staff Sergeant
U.S. Air Force, Appellant.

No. 93–0411.
CMR No. 29192.

U.S. Court of Military Appeals.

Argued March 2, 1994.

Decided Aug. 17, 1994.

For Appellant: *Colonel Jay L. Cohen* (argued); *Major George F. May* (on brief); *Colonel Terry J. Woodhouse* and *Major Mary C. Yastishock.*

For Appellee: *Captain Timothy G. Buxton* (argued); *Lieutenant Colonel Thomas E. Schlegel* and *Major John H. Kongable* (on brief); *Colonel Jeffery T. Infelise.*

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of communicating a threat, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. In accordance with appellant's pleas, the military judge also convicted him of a 1–day unauthorized absence, larceny, and failure to pay a just debt, in violation of Articles 86, 121, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 921, and 934, respectively. The approved sentence provides for a bad-conduct discharge, confinement and forfeiture of $350.00 pay per month for 10 months, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and sentence in an unpublished opinion. We granted review of the following issues:

I

WHETHER AIR FORCE REGULATION 30–2 PROHIBITED DISCIPLINARY USE OF APPELLANT'S ALLEGED THREAT AGAINST THE FIRST SERGEANT MADE DURING SELF–IDENTIFICATION FOR DRUG TREATMENT.

II

WHETHER THE CIRCUMSTANCES SURROUNDING APPELLANT'S ALLEGED COMMUNICATION OF A THREAT SHOW THE THREAT TO BE IDLE BANTER AND THEREBY RENDER THE EVIDENCE INSUFFICIENT TO CONVICT.

We hold that, as a matter of law, appellant's statements did not constitute communication of a threat. This holding with respect to Issue II renders Issue I moot.

On November 6, 1990, appellant returned from an unauthorized absence from his unit. That evening he went to the mental health clinic at the base hospital and asked to speak with Major Larson. Appellant was informed that Major Larson was on emergency leave. The emergency room doctor notified Captain Catherine Beck, the on-call social worker, and advised her that there was an individual in the emergency room who appeared distressed and "had to tell somebody something," but would not talk to the emergency room doctor.

Captain Beck went to the emergency room and identified herself to appellant. Appellant was tearful, wringing his hands, staring into space, and generally seemed distressed. Captain Beck told appellant that the emergency room doctor had reported that appellant "had something to say" and that she had been summoned "to see what this was." Appellant did not respond but merely looked at Captain Beck and shook his head. Captain Beck then told appellant that they were concerned and that they would not let him go until he told them what was bothering him. Appellant responded, "It's something I have to say." He said that "[h]is wife knew, his

son knew," and "[o]nce [he] told somebody, it's all over with."

Appellant told Captain Beck that "something" had "been bothering him for 11 years" and he wanted "to tell someone" but couldn't. Appellant said, "I can't live like this anymore. It'll be over," or words to that effect. Captain Beck had no idea what appellant was referring to, but she became concerned that he might be suicidal. She asked if he was suicidal, and he nodded his head, "Yes."

Captain Beck asked if someone brought him to the emergency room, and appellant responded that he came "on his own." Appellant said, "Nobody cares about me. The squadron doesn't care about me. The squadron doesn't tell me what's going on. Senior Master Sergeant [ (SMSgt) ] Bankey, I'd kill with no problem." SMSgt Bankey was appellant's first sergeant. Captain Beck then became concerned about appellant's being a threat to himself or to others, because she had not asked about his squadron or the people with whom he worked or about any homicidal thoughts. Appellant's comment about his first sergeant "seemed to come out of the blue."

After making the comment about his first sergeant, appellant told Captain Beck that he had been addicted to cocaine for 11 years and marijuana for 6 years. Appellant told Captain Beck that he used cocaine "almost daily" and "couldn't recall the last time he was without cocaine." He told Captain Beck that he had not slept for 4–5 days and had not eaten for 3–4 days.

Captain Beck regarded appellant's comment about SMSgt Bankey as a threat to kill him. Subsequently, appellant was convicted of communicating a threat to kill SMSgt Bankey. We granted review of the issue whether appellant's comment constituted a threat.

The elements of wrongful communication of a threat are:

(1) That the accused communicated certain language expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently or in the future;

(2) That the communication was made known to that person or to a third person;

(3) That the communication was wrongful; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 110b, Part IV, Manual for Courts–Martial, United States, 1984.

■ Since the granted issue requires us to determine the legal sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, a rational factfinder could have found that appellant's utterance communicated a present determination or intent to kill his first sergeant. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We hold that a rational factfinder could not have so found.

The pivotal question in this case is whether appellant's statement, "I'd kill" him, communicates "a present determination or intent" to kill SMSgt Bankey. Both the circumstances of the utterance and the literal language must be considered.

■ Paragraph 110c provides that "a declaration made under circumstances which reveal it to be in jest or for an innocent or legitimate purpose, or which contradict the expressed intent to commit the act, does not constitute this offense." An utterance conditioned on a variable that cannot occur is not a threat. *United States v. Shropshire,* 20 USCMA 374, 43 CMR 214 (1971). Even when the literal language appears to constitute a threat, "the surrounding circumstances may so belie or contradict the language of the declaration as to reveal it to be a mere jest or idle banter." *United States v. Gillu-*

*ly,* 13 USCMA 458, 461, 32 CMR 458, 461 (1963).

■ The literal meaning of the utterance in this case is problematical. Appellant did not say, "I'm going to kill him." Rather, he said, "I'd kill [him] with no problem." The word "I'd" is a contraction for "I would" or "I should." *Webster's Ninth New Collegiate Dictionary* 597 (Merriam–Webster, 1991). The words "would" and "should" express a condition antithetical to a present determination to harm another. Appellant's literal language expressed what he would or should do to his first sergeant based on an unknown and unexpressed condition.

Additionally, the circumstances of appellant's utterance belie a present determination or intent to kill. The evidence is uncontradicted that appellant went to the base mental health clinic in great distress, looking for help. He made the utterance to a health professional while describing the cause of his distress. The literal language of his utterance was conditional. Under such circumstances, it is clear that appellant was describing his state of mind, not threatening to kill his first sergeant.

We conclude that the error as to the conviction for communicating a threat is prejudicial as to sentence.

The decision of the United States Air Force Court of Military Review as to specification 1 of Charge II (communicating a threat) and the sentence is reversed. The findings of guilty thereon and the sentence are set aside. Specification 1 of Charge II is dismissed. A rehearing on sentence may be ordered.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and WISS concur.