## UNITED STATES

v.

**Robert E. HALL III, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 99 00754.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 4 Aug. 1998.

Decided 10 March 2000.

LCDR Robert C. Klant, JAGC, USN, Appellate Defense Counsel.

Maj Michael D. Tencate, USMC, Appellate Government Counsel.

LtCol Edward J. Duffy, USMCR, Appellate Government Counsel.

Before DORMAN and TROIDL, Senior Judges, and ROLPH, Appellate Military Judge.

DORMAN, Senior Judge:

The appellant stands convicted by a special court-martial consisting of a military judge sitting alone. At trial the appellant plead guilty to violating a general order by storing a firearm in his barracks room. The military judge determined that the appellant's pleas were providently entered and found the appellant guilty, consistent with his plea. Contrary to his pleas, the military judge also found the appellant guilty of communicating a threat. The appellant's offenses violated Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 (1994). The approved sentence includes confinement for 60 days, reduction to pay grade E–1, and a bad-conduct discharge.

We have carefully reviewed the record of trial, the appellant's assignment of error, and the Government's response. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Sufficiency of Evidence

In his single assignment of error the appellant argues that the evidence is insufficient to support his conviction for communicating a threat. The appellant apparently concedes that he said, "He don't know how bad I want to shoot him. I want to shoot that nigga. You know, I want—you know, I just want to take him out or whatever." Appellant's Brief of 2 November 1999 at 2; Record at 101. Nevertheless, he argues that this language does not express a present determination or intent to actually shoot the victim. Appellant's Brief at 3. The facts that gave rise to the appellant's conviction for communication of a threat are summarized as follows.

**Facts.** The victim, Lance Corporal Morrow, and the appellant were friends. On 17 February 1998 they both attended a battalion basketball game at the Marine Corps Air Ground Combat Center, Twentynine Palms, California. During the game, the appellant and one of his friends were heckling the players on the basketball court. At first, it was just good fun. LCpl Morrow believed that the appellant had been drinking. After the game was over, the appellant continued to heckle the players. When LCpl Morrow told the appellant that it was time to drop it, they exchanged heated words. Record at 97–98. They both became angry and were pulled apart to prevent them from fighting. They both boasted that they would "whip" each other's "butt." Leaving the basketball court, they saw each other again 5–10 minutes later in the parking lot of the appellant's barracks. By this time, LCpl Morrow was thinking rationally, but his "blood was still pumping."

LCpl Morrow did not live in the barracks; he was just waiting in the parking lot for another Marine to give him a ride to his apartment off base. He had been given a ride to the parking lot in another Marine's Jeep, and stood by the Jeep while awaiting his ride. Shortly thereafter, the appellant followed him into the parking lot. When the appellant arrived, he did not confront LCpl Morrow; rather, he was talking with some other Marines, but in a voice loud enough for LCpl Morrow to hear what he was saying. The appellant was still agitated. He paced back and forth and kept looking at LCpl Morrow. While the appellant was in this state and talking with the other Marines, who were trying to calm him down, LCpl Morrow heard the appellant say in a loud voice that "he wanted to shoot me and stuff like that." He also heard the appellant say, "[H]e don't know how bad I want to shoot him. I want to shoot that nigga." Record at 101. LCpl Morrow was aware that the appellant had a gun in his room.

Without confronting LCpl Morrow, the appellant then went into the barracks and got a 9mm pistol. LCpl Morrow heard the appellant cock the pistol. The appellant put the pistol in the small of his own back and came back downstairs to the parking lot where he had been standing before.[1] The appellant was still obviously angry. He again paced around and looked at LCpl Morrow, but he did not cross over to where LCpl Morrow was located, nor did he ever take out his pistol. LCpl Morrow was still standing next to the Jeep and by now was taking the appellant's actions seriously. About two minutes after the appellant returned, the driver of the Jeep arrived and LCpl Morrow left the area with him.

During cross-examination, LCpl Morrow testified that the other Marines who were talking with the appellant were laughing and trying to calm him down. Everything the appellant said, however, was directed to LCpl Morrow. Initially, LCpl Morrow did not take the matter seriously because everything the appellant was saying had been said at the gym, except for the comment about wanting to shoot him. At first, LCpl Morrow did not even take that comment seriously. Record at 103. When the appellant returned with the pistol, LCpl Morrow took it seriously, but he did not feel scared, or threatened enough to leave the area. He did, however, prefer standing outside the

---

1. The record does not reveal *how* LCpl Morrow knows what the appellant did inside the barracks.

vehicle so he could "take off" if he needed to. Record at 104.

**Discussion.** The facts presented in this case give rise to an issue of first impression. Neither the appellant nor the Government have cited any cases to us in which the purported threat was couched in terms of what the speaker "wanted" to do. Nor have we found any such case. Nevertheless, by application of a reasonable person standard to the words used in this case, and considering the circumstances that prompted the appellant to speak the words, we are convinced beyond a reasonable doubt of the appellant's guilt.

In support of his argument, the appellant relies on *United States v. Cotton*, 40 M.J. 93 (C.M.A.1994). At trial Cotton had been convicted of communicating a threat to kill his first sergeant. The precise language he used was, "Senior Master Sergeant [B], I'd kill with no problem." *Cotton*, 40 M.J. at 94. In reviewing Cotton's conviction, the court examined not only the exact words spoken, but also the circumstances surrounding the utterance. *Id.* at 95. In that case, the words were spoken to an on-call social worker in the emergency room at the base hospital. Cotton had gone to the mental health clinic on his own to speak with another officer. When that officer was not available, the emergency room doctor notified the on-call social worker that Cotton was there and that he "appeared distressed and 'had to tell somebody something,' but would not talk to the emergency room doctor." *Id.* at 94. In examining the precise language spoken to the social worker, the court found that the language Cotton used expressed a sentiment of "I would" or "I should" kill, not that he was going to do it. The court found such language to be "antithetical to a present determination to harm another." *Id.* at 95. Accordingly, Cotton's conviction for communicating a threat was set aside.

In response to the appellant's arguments, the Government relies upon *United States v. Phillips*, 42 M.J. 127 (1995). The Government cites this case in support of its position that we are to apply an objective standard to determine whether a threat has been communicated. In reviewing the threat in the *Phil-*

*lips* case, our superior court noted that its only concern was "whether a reasonable fact-finder could conclude beyond a reasonable doubt that a reasonable person in the recipient's place would perceive the contested statement by the appellant to be a threat." *Phillips*, 42 M.J. at 130. *Phillips* also examined the surrounding circumstances of the precise language used, and concluded that Phillips had threatened the victim in that case. *Id.* at 129–31.

The test for legal sufficiency requires this court to review the evidence in the light most favorable to the Government. In doing so, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of the accused's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325. Applying these standards, and the objective analysis from *Phillips*, we find that the evidence is both legally and factually sufficient.

In reaching our decision, we find the following facts relevant in determining the meaning of the appellant's spoken words. First, a few minutes before the appellant threatened LCpl Morrow, they exchanged heated words and were physically restrained from fighting with each other. Second, when the appellant arrived at his barracks parking lot, he was still very agitated. Third, he paced back and forth, stared at the victim, appeared angry, and spoke in a voice loud enough for the victim to hear at some distance. Finally, the appellant continued this agitated behavior in spite of efforts by others to calm him, and he remained focused upon the victim. When the appellant's language is considered in conjunction with these surrounding circumstances, we conclude that "a reasonable person in the [victim's] place would perceive the contested statement by the appellant to be a threat." *Phillips*, 42 M.J. at 130.

In determining whether the words expressed "a **present** determination or intent to wrongfully injure [LCpl Morrow] ... presently or in the future," MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 110b(1) (emphasis added), we did not consider the fact that the appellant retrieved a pistol *after* he spoke the words of the threat. We do find, however, that the evidence does not support the precise language of the threat quoted in the specification. We, therefore, will modify the findings to comport with the evidence.

### Conclusion

Accordingly, we affirm the findings, except that the quoted language in the Specification of Charge V is modified to read as follows: "He don't know how bad I want to shoot him. I want to shoot that nigga. You know, I just want to take him out or whatever." A corrected promulgating order shall be issued. The sentence, as approved by the convening authority, is approved.

Senior Judge TROIDL and Judge ROLPH concur.