# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
JOHNSON, KRAUSS, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E-2 ANDREW L. GEAN**
**United States Army, Appellant**

ARMY 20100499

Headquarters, Joint Readiness Training Center and Fort Polk
Charles Hayes, Military Judge (arraignment)
Virginia Carlton, Military Judge (trial)
Colonel Keith C. Well, Staff Judge Advocate

For Appellant:  Captain Matthew T. Grady, JA (argued); Colonel Mark Tellitocci, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Laura R. Kesler, JA; Captain Matthew T. Grady, JA (on brief); Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Richard E. Gorini, JA; Captain Matthew T. Grady, JA (on brief & reply brief in response to the specified issue).

For Appellee:  Captain Bradley M. Endicott, JA (argued); Major Amber J. Williams, JA; Major Ellen S. Jennings, JA; Captain Bradley M. Endicott, JA (on brief); Major Ellen S. Jennings, JA; Captain Bradley M. Endicott, JA (on brief in response to the specified issue).

30 April 2012

---------------------------------
OPINION OF THE COURT
---------------------------------

KRAUSS, Judge: (Part I — Findings)

A military judge, sitting as a special court-martial empowered to adjudge a bad-conduct discharge, convicted appellant, pursuant to his pleas, of two specifications of absence without leave (AWOL) in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886 (2006) [hereinafter UCMJ].  Contrary to appellant's pleas, the military judge convicted him of three specifications of communicating a threat in violation of Article 134, UCMJ.  *Manual for Courts-Martial, United States* (2008 ed.) [hereinafter *MCM*], pt. IV, ¶ 110.  The military judge acquitted appellant of a fourth specification of communicating a threat in violation of Article 134, UCMJ.  The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for 164 days, and reduction to the

grade of E-1. Appellant was credited with 164 days of confinement against the sentence to confinement.

Appellant's case is now before this court for review under Article 66, UCMJ. He raises four assignments of error asserting that the communications that served as the subject of his prosecution under Article 134, UCMJ, were privileged under Military Rule of Evidence [hereinafter Mil. R. Evid.] 513, that the military judge erred by failing to suppress those statements he made to the psychiatrist involved in the case, that the evidence is legally and factually insufficient to support his convictions for communicating a threat, and that the military judge erred by admitting hearsay evidence as part of the government's case in aggravation. Having examined the record of trial and considered the briefs and arguments of the parties, we find the evidence both legally and factually insufficient to support appellant's convictions for communicating a threat. We need not, therefore, address the issues relative to the psychotherapist-patient privilege under Mil. R. Evid. 513 or the applicability of Article 31, UCMJ, under the circumstances.

## BACKGROUND

Private (PV2) Gean, an angry young man aggrieved by the various difficulties of his service in the Army, and life in general, was apparently apt to utter rather graphic remarks about what he would like to do to some of those who crossed him. Private Gean himself sought help to cope with his anger and the command apparently independently acquired concern over PV2 Gean's condition and state of mind based on his behavior and utterances he made.

Whatever it is PV2 Gean did say or do that prompted his commander to direct the psychiatric evaluation that led to his prosecution for communicating threats, we do not know. The only thing the record establishes with any degree of reliability is that the commander believed PV2 Gean may have constituted a threat to himself or others and that the psychiatrist, duty-bound to assess the man for threats to the safety of the community, understood that he had made threats prior to being evaluated by her.

This understanding prompted the psychiatrist to direct PV2 Gean to respond to her questions about threats that he may have made. Private Gean was not free to leave and, according to the psychiatrist, not only expected to answer the questions posed but required to do so as the command directed the evaluation and her duty was to conduct the evaluation. If PV2 Gean did not respond, she could not effectively assess the danger appellant posed to himself or others. Never were Article 31 rights rendered and never did PV2 Gean apparently do otherwise than respond honestly to the questions posed. For responding to the questions he dutifully answered, PV2 Gean stands convicted of communicating a threat.

2

The utterances for which he stands convicted are that "he would break Sergeant CM's legs," "he would cut Sergeant G's mouth open," and "he would break [Specialist SW's] jaw," or words to that effect. The psychiatrist testified that she understood his statements to constitute actual threats.

## LAW AND DISCUSSION

Of the essential elements of proof to the offense of communicating a threat, we here primarily concern ourselves with the penultimate: that the communication was wrongful. *MCM*, pt. IV, ¶ 110.b.(3).

Whether a threat is wrongful depends on the circumstances within which it is uttered and the intent and purpose behind the statement. If a threat is uttered in jest or for a legitimate purpose, it is not wrongful as contemplated under Article 134, UCMJ. *See United States v. Brown*, 65 M.J. 227, 231–32 (C.A.A.F. 2007); *United States v. Schmidt*, 16 U.S.C.M.A. 57, 36 C.M.R. 213, 215–16 (1966); *MCM*, pt. IV, ¶ 110c. We hold that when a soldier is directed to undergo psychiatric evaluation, required to respond to questions about threats, or his thoughts of threats, as part of that evaluation, does so honestly, and in doing so communicates a threat, such a threat is not wrongful as a matter of law. *See Schmidt*, 36 C.M.R. at 217. *See, e.g.*, *United States v. Wright*, 65 M.J. 703, 705 (N.M. Ct. Crim. App. 2007).

Compelled by command direction and the demands of the evaluating psychiatrist to respond, PV2 Gean responded honestly in hopes of receiving help for his problems coping with anger and stress. In doing so he uttered what might be considered threats. The subjects of these threats were third parties.[1] While appellant made no jest, the threats he made were uttered for a legitimate purpose— a purpose shared by all interested parties: his command, the evaluating psychiatrist and appellant himself. That purpose was a psychiatric evaluation to determine whether he was a danger to himself or others and in any event how to best address his mental and emotional state and the behavior he exhibited. The law is not so dim as to damn a soldier for responding honestly to a psychiatrist when compelled by command directive and psychiatric need to do so.[2]

---

[1] Nothing in this decision immunizes a soldier from potential prosecution under Article 134 for threats levied directly against an evaluating psychiatrist or threats made outside the scope of responses to questions posed during any such evaluation.

[2] Because we find that conviction for communicating a threat is invalid as a matter of law under these circumstances, holding that such communication cannot be wrongful as contemplated under Article 134, UCMJ, we need not address in detail similar difficulties of proof with both the first and terminal elements of the offense in this case. Suffice it to say that, at the least, we maintain reasonable doubts over

(continued . . .)

GEAN—ARMY 20100499

Senior Judge JOHNSON and Judge BURTON concur in Part I.

JOHNSON, Senior Judge: (Part II — sentence)

I write for the majority concerning the sentence. We are convinced that we can perform a sentence reassessment in this case and need not return the case to the convening authority for a sentence rehearing. In making our decision, we consider the principles defined in *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986); and *United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F. 2006), including those specifically discussed in Judge Baker's concurring opinion, *Moffeit*, 63 M.J. at 43 (Baker, J., concurring). This non-exhaustive list includes the following: (1) whether there are changes in the penalty landscape, including whether charges with significant exposure or aggravating circumstances are taken off the table; (2) whether appellant chose sentencing by members or by military judge alone; (3) the nature of the remaining offense(s); and (4) our identification on the record of the factors that informed our reassessment decision. *Id.*

First, the penalty landscape has not significantly changed. Appellant remains convicted of two AWOL offenses, each including a maximum of one year's confinement and a punitive discharge. Given the jurisdictional limit of the court-martial, the maximum exposure faced by appellant remains unchanged. Appellant pled guilty to one AWOL of approximately three months, and another of approximately four months. Appellant did not return to duty voluntarily after his second AWOL, and engaged in other misconduct before being returned to military authority. Further, during sentencing his platoon leader testified that appellant's absence "really hurt" the platoon and had a "significant negative impact on the mission readiness for the battalion." Finally, government counsel spoke of appellant's threats in closing on sentence but concentrated most of his argument on the AWOL offenses, positing to the military judge that they were worth seven of the ten months of confinement ultimately requested. In sum, although today we dismiss the specifications concerning appellant's threats, the sentencing landscape has not significantly changed and several aggravating circumstances remain on the table. Second, appellant chose to be tried and sentenced by a military judge alone. A service court of criminal appeals is "more likely to be certain of what a military judge alone would have done than what a panel of members would have done." *Moffeit*, 63 M.J. at 43. Third, the nature of this offense more readily lends itself to sentence reassessment. This court has "the experience and familiarity . . . to reliably

---

(. . . continued)
whether appellant's utterances actually expressed a present determination or intent to wrongfully injure or whether such utterances could possibly prejudice good order and discipline or tend to discredit the service under the circumstances of this case. UCMJ art. 66(c). *See also United States v. Cotton*, 40 M.J. 93, 95 (C.M.A. 1994); *MCM*, pt. IV, ¶¶ 60.c.(2)(a), (3); 110.b.(1), (4); 110.c.

4

determine what sentence would have been imposed at trial by the military judge[ ].” *Id.* Indeed, this court routinely reviews findings and sentences related to AWOL offenses.

After applying the *Sales* and *Moffeit* analysis, and after careful consideration of the entire record, we set aside appellant's adjudged confinement and approve only the bad-conduct discharge. We are confident that affirming a sentence of only a bad-conduct discharge is *at least* a sentence that is equal to or no greater than a sentence that would have been imposed absent any error, and is appropriate. *Sales*, 22 M.J. at 308.

## CONCLUSION

The findings of guilty to Specifications 1, 2 and 3 of Charge II are set aside and dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence in accordance with the sentencing principles outlined above, this court affirms only so much of the sentence as provides for a bad-conduct discharge. The sentence, as modified, is affirmed. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision are ordered restored. *See* UCMJ art. 58b(c) and 75(a).

Judge BURTON concurs.

Judge KRAUSS, dissenting from Part II:

I differ with my learned friends on the question of sentence. I cannot conclude with sufficient confidence that, absent the erroneous conviction for the offenses here alleged under Charge II, the sentence adjudged would have been of at least a certain severity. The particular circumstances of this case, rather, warrant a rehearing on sentence: Appellant here suffers a bad-conduct discharge and received time in confinement equal to the credit awarded for his time spent in pretrial confinement. Recognizing that appellant pled guilty to the two AWOL specifications alleged, considering the evidence in extenuation and mitigation as well as aggravation, and acknowledging the jurisdictional limit of the court-martial at hand, removing the more serious threat offenses from the judgment to be made convinces me that a rehearing on sentence is the better course. *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986); *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006). *See also, e.g.*, *United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006).

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

5